UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PAMELA MISH,

               Plaintiff,                                    Hon. Janet T. Neff

v.                                                 Case No. 1:09-CV-753

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____/


## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and

XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative

record, and provides that if the Commissioner's decision is supported by substantial evidence, it

shall be conclusive.  Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate

Judges to submit proposed findings of fact and recommendations for disposition of social security

appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age at the time of the ALJ's decision. (Tr. 29, 55). She successfully completed high school and worked previously as a receptionist/clerical support person. (Tr. 28, 98-111).

Plaintiff applied for benefits on March 16, 2005, alleging that she had been disabled since May 5, 2004, due to a shoulder impairment, back impairments, depression, headaches, ankle impairments, right knee impairment, and sleep apnea. (Tr. 55-57, 132-32). Plaintiff later amended her onset date to November 15, 2004. (Tr. 500). Plaintiff's applications were subsequently denied following a hearing before an Administrative Law Judge (ALJ). (Tr. 30-54, 415-26, 433-82). This determination was later vacated by the Appeals Council and remanded for further factual development. (Tr. 430-32).

On September 26, 2008, Plaintiff appeared before ALJ William Decker, with testimony being offered by Plaintiff and vocational expert, James Lozer. (Tr. 721-57). In a written decision dated November 17, 2008, the ALJ determined that Plaintiff was not disabled. (Tr. 19-29). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 8-11). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On October 2, 2003, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed "mild disc space narrowing. . .without evidence of disk herniation, spinal or foraminal stenosis." (Tr. 330).

On January 7, 2004, Plaintiff participated in a sleep study, the results of which indicated that she was experiencing "reduced sleep efficiency secondary to obstructive sleep events." (Tr. 187). Plaintiff was prescribed a CPAP device after which Plaintiff's condition "clinically improved." (Tr. 187). The following month, Plaintiff reported that she "feels more alert during the day" and "is getting more of her housework done and feels more rested in the morning when she wakes up." (Tr. 187).

On June 5, 2004, Plaintiff participated in an MRI examination of her right knee, the results of which revealed the presence of tendinitis, but "no internal derangements." (Tr. 261-62). Treatment notes dated July 6, 2004, indicate that a brace and physical therapy "has worked very well" for Plaintiff's knee pain. (Tr. 258). An examination of Plaintiff's right knee revealed that it was stable with no effusion. (Tr. 258). Lachman[1] and McMurray[2] tests were both negative. (Tr. 258). Treatment notes dated July 13, 2004, revealed that Plaintiff exhibited full range of knee motion. (Tr. 257). The doctor reported that Plaintiff "can return to full duty without restrictions." (Tr. 257).

---

[1] Lachman's test is used to determine whether a patient has suffered a tear of the anterior cruciate ligament. *See*, *e.g.*, ACL Injury, available at, http://www.mayoclinic.com/health/acl-injury/DS00898/DSECTION=tests-and-diagnosis (last visited on September 24, 2010); Lachman's Test, available at http://www.fpnotebook.com/Ortho/Exam/LchmnTst.htm (last visited on September 24, 2010).

[2] McMurray's sign refers to the occurrence of a clicking sound during the manipulation of the knee, which is indicative of an injury of a meniscus of the knee joint. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* M-72 (Matthew Bender) (1996).

On November 10. 2004, Plaintiff reported experiencing pain in her back and right shoulder.  (Tr. 256).  Plaintiff exhibited full range of shoulder motion and the doctor discerned no evidence of swelling.  (Tr. 256).  The doctor concluded that Plaintiff's shoulder was "normal."  (Tr. 256).  An examination of Plaintiff's spine and paraspinous musculature revealed "no tenderness to palpation."  (Tr. 256).  Plaintiff exhibited normal strength and reflexes and was able to "fully flex and extend."  (Tr. 256).  Straight leg raising was negative.  (Tr. 256).

On November 11, 2004, Dr. Scott Hotchkiss reported that Plaintiff could work subject to "limitation of standing more than 45 minutes and to avoid repetitive lifting bending twisting motions."  (Tr. 327).  The doctor also noted that Plaintiff "will need a job which accommodates less than 10 lbs. lifting [with her] right arm on a regular basis."  (Tr. 327).  Dr. Hotchkiss recommended that Plaintiff "have more sedentary jobs. . .to accommodate limitations." (Tr. 327).

On December 17, 2004, Plaintiff was examined by Dr. Samual Minor.  (Tr. 324-26). Plaintiff reported that she was experiencing pain in her neck and upper back.  (Tr. 324).  Palpation of Plaintiff's thoracic paravertebral muscles produced "tenderness," but palpation of the lumbar paravertebral muscles and cervical paravertebral muscles revealed "no tenderness."  (Tr. 325). Plaintiff also exhibited "good range of motion of both shoulders."  (Tr. 325).

On December 23, 2004, Plaintiff was examined by Dr. Hotchkiss.  (Tr. 322). Palpation of Plaintiff's right paraspinous muscles produced "tenderness."  (Tr. 322).  Plaintiff exhibited full range of motion in her cervical spine and normal strength in her upper extremities. (Tr. 322).  Plaintiff also exhibited normal grip strength.  (Tr. 322).  X-rays of Plaintiff's cervical

spine were "normal." (Tr. 321). Plaintiff was diagnosed with a "cervical strain." (Tr. 322). On January 20, 2005, Plaintiff reported that she was "feeling better." (Tr. 320).

On March 28, 2005, Plaintiff completed a report describing her activities. (Tr. 112-19). Plaintiff reported that she cares for her various animals, watches television, talks on the telephone, shops for groceries, attends appointments, prepares meals, washes laundry, uses a computer, and attends sporting events. (Tr. 112-15). Plaintiff also reported that she mows her lawn using a riding lawn mower and goes out once weekly to listen to her friend sing. (Tr. 114-16).

On June 2, 2005, Plaintiff was examined by Dr. Minor. (Tr. 313-16). Plaintiff reported that she was experiencing back spasms and joint pain. (Tr. 313). An examination of Plaintiff's back revealed "no lumbar paravertebral muscle tenderness or spasm on palpation" and "no tenderness on palpation of the cervical paravertebral muscles." (Tr. 315). Palpation of the thoracic paravertebral muscles did produce "tenderness." (Tr. 315). An examination of Plaintiff's joints revealed "no joint deformity" and "no joint swelling." (Tr. 315). Plaintiff exhibited "no pain of joints on range of motion" and "good range of motion of both shoulders." (Tr. 315). The doctor also reported that Plaintiff experienced "no pain on palpation of the 18 trigger points of fibromyalgia." (Tr. 315). Plaintiff was instructed to "exercise more." (Tr. 315).

On June 28, 2005, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed "mild lumbar degenerative changes. . .without disc herniation or canal stenosis." (Tr. 311).

Treatment notes dated July 25, 2005, indicate that Plaintiff was "tender" at 15 of the fibromyalgia trigger points. (Tr. 309). Treatment notes dated October 28, 2005, indicate that

Plaintiff was experiencing "generalized muscle pain." (Tr. 304). Dr. Hotchkiss "stress[ed to Plaintiff] the importance" of exercising daily. (Tr. 304).

On November 23, 2005, Plaintiff was examined by Dr. Charles Huebner with the Harbor Arthritis Center. (Tr. 531). Plaintiff was diagnosed with "fibromyalgia with tenderness over all ACR tender points." (Tr. 531). The doctor provided Plaintiff "extensive counseling regarding exercise, using a graded and progressive aerobic program of walking." (Tr. 531). Plaintiff was also "advised [she] must lose weight and quit smoking." (Tr. 531).

X-rays of Plaintiff's knees, taken on May 4, 2006, revealed "mild symmetrical medial joint space narrowing." (Tr. 294).

On November 14, 2006, Plaintiff participated in an independent functional capacity evaluation at the request of Dr. Hotchkiss. (Tr. 378-98). The results of this examination revealed that Plaintiff can perform "light level work" subject to the following restrictions: (1) she can occasionally lift 20 pounds and frequently lift 10 pounds; (2) she can occasionally carry 20 pounds; (3) she can frequently sit, and perform light grasping and fingering activities; and (4) she can occasionally stand, walk, climb, stoop, bend, kneel, reach, and perform firm grasping activities. (Tr. 396-97). The examiner also observed that "inconsistencies exist between [Plaintiff's] reported pain levels and observed pain behaviors and performance" and, furthermore that Plaintiff's "complaints of pain" were "inappropriate for observed behavior." (Tr. 396).

On December 12, 2006, Dr. Hotchkiss completed a report concerning Plaintiff's ability to perform physical activities. (Tr. 399-402). The doctor reported that during an 8-hour workday Plaintiff can sit for 6 hours, stand for 2 hours, and walk for 2 hours. (Tr. 399). The doctor reported that Plaintiff required a sit-stand option. (Tr. 399). Dr. Hotchkiss reported that Plaintiff

can frequently lift 10 pounds and occasionally lift 20 pounds. (Tr. 399). The doctor reported that Plaintiff can occasionally carry 20 pounds. (Tr. 399). The doctor reported that Plaintiff can occasionally stoop, squat, reach, kneel, and climb stairs, and frequently perform handling and fingering activities. (Tr. 400).

On September 27, 2007, Dr. Hotchkiss authored a letter concerning Plaintiff's condition. (Tr. 534). The doctor reported that Plaintiff suffers from "progressive fibromyalgia with worsening pain, limitation of activity and fatigue." (Tr. 534). Dr. Hotchkiss noted that Plaintiff "has 20+ trigger points to her upper extremities, back and lower extremities." (Tr. 534). The doctor reported that Plaintiff "has attempted to do her own tattooing business which she states she can no longer adequately pursue due to the degree of pain and limitation of activity." (Tr. 534). The doctor reported that Plaintiff "is unable to sustain full time employment either as a receptionist or doing tattoos." (Tr. 534).

On November 1, 2007, Plaintiff was examined by Dr. Katherine Phelps. (Tr. 576-78). Plaintiff reported that she was experiencing depression due to her fibromyalgia. (Tr. 576). Plaintiff appeared "mildly depressed," but the results of a mental status examination were otherwise unremarkable. (Tr. 577). Plaintiff was diagnosed with dysthymic disorder. (Tr. 578).

On November 5, 2007, Dr. Hotchkiss completed a questionnaire concerning Plaintiff's ability to perform work-related activities. (Tr. 567-74). The doctor reported that during an 8-hour workday Plaintiff can sit for 1 hour and stand/walk for 1 hour. (Tr. 569). The doctor reported that Plaintiff requires a sit-stand option. (Tr. 569). Dr. Hotchkiss reported that Plaintiff can frequently lift/carry 5 pounds and occasionally lift/carry 10 pounds. (Tr. 570). The doctor reported that Plaintiff's "fatigue or other symptoms" would "constantly" interfere with her ability

to maintain attention and concentration. (Tr. 572). The doctor also reported that Plaintiff can tolerate only "low stress" jobs. (Tr. 572).

On February 22, 2008, Dr. Hotchkiss completed a questionnaire concerning Plaintiff's ability to perform work-related activities. (Tr. 582-88). The doctor reported that Plaintiff experiences moderately severe pain on a daily basis. (Tr. 584). Dr. Hotchkiss reported that Plaintiff "usually has 20+ trigger points on examination." (Tr. 588). The doctor reported that during an 8-hour workday Plaintiff can sit for 1 hour, stand/walk for 1 hour, and requires a sit-stand option. (Tr. 585). The doctor reported that Plaintiff can frequently lift/carry 10 pounds and occasionally lift/carry 20 pounds. (Tr. 585). The doctor also reported that Plaintiff "is unlikely to improve to a point of working [an] unrestricted job 8 hours per day on a full-time basis." (Tr. 588).

On April 21, 2008, Plaintiff reported that she "recently drove to Georgia." (Tr. 632). On April 25, 2008, Plaintiff reported that on a "typical" day she exercises for 60-90 minutes at a gym, watches television, and "spends time on the computer." (Tr. 593). Plaintiff reported that she shared the shopping and housecleaning chores with her roommate. (Tr. 592). Plaintiff also reported that she operated a tattoo and piercing business. (Tr. 592-93).

**ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffers from (1) degenerative disc disease of the lumbar spine; (2) obstructive sleep apnea; (3) major depressive disorder; (4) pain disorder; and (5) personality disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 22-25). The ALJ

concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 25-29). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) she can occasionally lift/carry 10 pounds and frequently lift/carry 5 pounds; (2) in an 8-hour work day, she can stand and/or walk for 2 hours and sit for 6 hours; (3) she requires a sit/stand option every 10-15 minutes; (4) she cannot perform pushing or pulling activities; (5) her ability to use her hands to perform grasping, turning and twisting activities is significantly limited; (6) she cannot perform fine manipulation activities; (7) she cannot perform reaching activities; (8) she should avoid working around unprotected heights; (9) she cannot kneel, bend, or stoop; and (10) she is limited to the performance of simple routine tasks with minimal interaction with co-workers and supervisors. (Tr. 25). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a

claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert James Lozer.

The vocational expert testified that there existed approximately 5,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 730-31, 748-54). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

a.      The ALJ Properly Evaluated Plaintiff's Impairments

Plaintiff asserts that the ALJ erred by failing to recognize that she suffered from severe fibromyalgia and obesity. While the ALJ concluded that Plaintiff suffered from several severe impairments, he did not find that Plaintiff's fibromyalgia or obesity constituted "severe" impairments.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); *see also*, *Despins v. Commissioner of Social Security*, 257 Fed. Appx. 923, 929 n.2 (6th Cir., Dec. 14, 2007).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)); *see also*, *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

The ALJ's conclusion that Plaintiff's fibromyalgia and obesity are not "severe" impairments is not supported by substantial evidence. The record reveals without question that Plaintiff experiences both fibromyalgia and obesity. While the Court agrees with the ALJ that these impairments impose only minimal limitations on Plaintiff's ability to perform work activities, such does not diminish the evidence that Plaintiff's fibromyalgia and obesity are "severe" impairments as that term is defined by the relevant Social Security regulations.

The ALJ's shortcoming in this regard, however, does not alter the outcome in this case. As previously noted, while the ALJ did not find these impairments to be severe, he

nonetheless incorporated extensive physical limitations into his RFC determination. The ALJ's RFC determination is supported by substantial evidence and adequately takes into account the physical limitations imposed by Plaintiff's fibromyalgia and obesity.

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (citing *Maziarz*, 837 F.2d at 244); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the evidence of record. Thus, even if the Court assumes that the ALJ erred in failing to find that Plaintiff suffered from severe obesity or fibromyalgia, such does not call into question the substantiality of the evidence supporting the ALJ's decision. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in

substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

b. The ALJ Properly Evaluated the Medical Evidence

As noted above, Dr. Hotchkiss reported that during an 8-hour workday Plaintiff can sit for only 1 hour and stand/walk for only 1 hour. The doctor also reported that Plaintiff "is unlikely to improve to a point of working [an] unrestricted job 8 hours per day on a full-time basis." The ALJ rejected these opinions. (Tr. 27). Plaintiff asserts that because Dr. Hotchkiss was her treating physician, the ALJ was obligated to accord controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to his assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ rejected the extreme opinions expressed by Dr. Hotchkiss as inconsistent with the medical record. As detailed above, objective medical tests have failed to reveal that Plaintiff suffers from an impairment that can reasonably be expected to impose such extreme limitations. While Plaintiff appears to experience fibromyalgia, the results of physical examinations likewise failed to reveal findings which support Dr. Hotchkiss' opinion.

For example, Dr. Minor reported that palpation of Plaintiff's thoracic paravertebral muscles produced "tenderness," but palpation of the lumbar paravertebral muscles and cervical paravertebral muscles revealed "no tenderness." The doctor also reported that Plaintiff also exhibited "good range of motion of both shoulders." Following a subsequent examination, Dr. Minor reported that an examination of Plaintiff's back revealed "no lumbar paravertebral muscle tenderness or spasm on palpation" and "no tenderness on palpation of the cervical paravertebral muscles." While palpation of Plaintiff's thoracic paravertebral muscles did produce "tenderness,"

an examination of Plaintiff's joints revealed "no joint deformity" and "no joint swelling." Plaintiff also exhibited "no pain of joints on range of motion" and "good range of motion of both shoulders." Dr. Minor also observed that Plaintiff experienced "no pain on palpation of the 18 trigger points of fibromyalgia."

The results of a November 14, 2006 functional capacity evaluation were also entirely consistent with the ALJ's RFC determination. As that examination also revealed, "inconsistencies exist between [Plaintiff's] reported pain levels and observed pain behaviors and performance" and, furthermore that Plaintiff's "complaints of pain" were "inappropriate for observed behavior." Furthermore, as the ALJ observed, Dr. Hotchkiss had himself previously opined that Plaintiff was limited to an extent entirely consistent with his RFC determination. As the ALJ recognized, the medical record does not reveal that following Dr. Hotchkiss' more favorable opinion Plaintiff's condition deteriorated to the extent later asserted. In sum, substantial evidence exists to support the ALJ's decision to accord less than controlling weight to Dr. Hotchkiss' opinions.

c.      The ALJ Properly Assessed Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that she experiences constant muscle ache and weakness. (Tr. 737). She also testified that she can stand/walk for less than 30 minutes and is unable to sit for even 15 minutes. (Tr. 743). Plaintiff testified that she was unable to lift 10 pounds. (Tr. 743). Plaintiff also testified that she has to take several naps during the day and is unable to walk even 30 yards. (Tr. 741-42). The ALJ discounted Plaintiff's subjective allegations of pain and limitation, concluding that such were "not entirely credible in light of the claimant's own description of her activities and lifestyle, the degree of medical treatment required, the claimant's

demeanor at the hearing, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions regarding her ability to work." (Tr. 27). Plaintiff asserts that the ALJ failed to give proper weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ examined the record and explained in detail why he found Plaintiff less than credible. As previously noted, Plaintiff's allegations of extreme limitation are not supported by the medical record. Moreover, Plaintiff's reported activities (e.g., driving to Georgia, exercising for 60-90 minutes daily, using a computer daily, performing shopping and housekeeping activities, and operating a tattooing and piercing business) are not consistent with her allegations of extreme pain and limitation. In sum, there exists substantial evidence to support the ALJ's credibility determination.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: October 4, 2010

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge